IN THE

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA

v.  Case No. 3:12-cr-00009-GEC

STEPHEN DOMINICK McFADDEN,

        Defendant

**MOTION TO PRECLUDE EVIDENCE**

Now comes your Defendant, Stephen Dominick McFadden, and prays this Court to rule inadmissible various opinions and facts offered or expected to be offered by the United States in his upcoming trial.

**Facts:**

Stephen McFadden is charged with violating 21 U.S.C. §841, as expanded by 21 U.S.C. §813 to apply to the distribution of controlled substance analogues, which are in turn defined in 21 U.S.C. §802(32):

The term "controlled substance analogue" means a substance –

(i)    the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II; [and either][1]

---

[1] As we argue later, virtually every court that has considered the issue has concluded that, the language of the statute notwithstanding, the only way to read the statute and have it make

SNOOK & HAUGHEY, P.C.

1

  (ii)  which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

  (iii)  with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

The United States has provided copies of declarations by chemist Thomas DiBerardino and drug science specialist Cassandra Prioleau. In this case, Mr. McFadden is charged with selling three chemicals:

  A.  MDMC, which Dr. DiBerardino refers to as 3,4-methylenedioxymethcathinone and which Dr. Prioleau refers to as 3,4-methylenedioxy-N-methylcathinone. (Dr. Prioleau also refers to the chemical as MDMC.) Both experts also refer to this chemical as methylone.

  B.  MDPV, technically known as 3,4-methylenedioxypyrovalerone.

  C.  4-MEC, technically known as 4-methyl-N-ethylcathinone.

The indictment alleges that these three substances are controlled substance analogues, though the indictment does not specify the controlled substances to which they are alleged to be analogous.

*Methylone/MDMC:*

  In Dr. DiBerardino's declaration (attached as Exhibit A), he states that methylone/MDMC is structurally analogous to 3,4-methylenedioxymethamphetamine (MDMA).

---

sense is to hold that the government must prove BOTH paragraph (i) and EITHER paragraph (ii) or paragraph (iii).

In Dr. Prioleau's declaration (attached as Exhibit B), she states that methylone/MDMC is also pharmacologically analogous to 3,4-methylenedioxymethamphetamine (MDMA).  However, in the course of her declaration concerning methylone/MDMC, she also includes a paragraph 5(e) – which may be simply an error – in which she makes reference to MDPV having an effect similar to methamphetamine.

We are not aware of any information that suggests that McFadden described the effects of methylone/MDMC to anyone.

*MDPV:*

In his declaration, Dr. Berardino describes MDPV as being structurally similar to the schedule I controlled substance methcathinone.

In her declaration, Dr. Prioleau also describes MDPV as being pharmacologically similar to methcathinone.  She then goes on to recite scientific literature in which MDPV's pharmacological properties are likened to those of methamphetamine (paragraph 5(d), which is the same text that seems to have been erroneously included in her declaration concerning methylone).

*4-MEC:*

In his declaration, Dr. Berardino describes 4-MEC as being structurally similar to the schedule I controlled substance methcathinone.

In her declaration, Dr. Prioleau also concludes that 4-MEC is pharmacologically similar to methcathinone.

In a telephone conversation with McFadden (a transcript is attached as Exhibit C), a government witness, Lois McDaniel, elicits from McFadden agreement that a product – "New Up" – that includes 4-MEC is similar to "cocaine" or "crystal meth":

McDaniel: Ok, which one of those would be like a cocaine though?

McFadden: Probably, the alpha, with the MEC

McDaniel: Oh ok well see I didn't know that, what about the S?

McFadden: That would be the no speed limit.

McDaniel: Ok and that ones like the crystal meth,

McFadden: Well I mean people compare it to it but ya know I don't know nothing about that

McDaniel: Oh ok but you have got the new up what is the new up then

McFadden: Well that is the new up, that is the 4-mec and the alpha that is the closet to the other thing you were saying

McDaniel: Oh ok, alright, So if this people ask me, ok so the no speed limit is going to be like the cocaine then

McFadden: No like the S

McDaniel: And then the crystal meth one is which one?

McFadden: That is the crystal meth one, the no speed limit

Mr. McFadden does not liken the 4-MEC to methcathinone, perhaps because he has no clue how any of these substances actually work, and has no knowledge at all of methcathinone.

**Argument:**

The only common-sense way to interpret this statute is to conclude that the government must prove beyond a reasonable doubt that methylone is a controlled substance analogue of MDMA, that MDPV is a controlled substance analogue to methcathinone, and the 4-MEC is a controlled substance analogue to methcathinone. If Mr. McFadden represented to Lois McDaniel that 4-MEC is "like" cocaine or crystal meth, that cannot be admitted to prove that he represented that 4-MEC was substantially similar to methcathinone – particularly in the absence of any evidence that Mr. McFadden was familiar with methcathinone.

The interpretation that the three prongs of the definition of the controlled substance analogue must all be evaluated with relation to the same chemical is supported by an analysis of the text of the statute itself.

First, we ask the Court to recognize that the proper way to look at the statute is to recognize that it requires proof of the first element – that the suspect chemical has a chemical structure that "is substantially similar to the chemical structure of a controlled substance in schedule I or II" – and EITHER the second or the third element. There have been two reported decisions in the U.S. District Court for the Eastern District of Virginia that have so held. Judge Ellis found

> ... the word "analogue," which Congress chose to include in Section 802(32)(A) as demarcating the statute's scope, has a settled meaning that is consistent with the conjunctive interpretation, but flatly inconsistent with the disjunctive interpretation. An analogue, defined in the chemical context, is a "structural derivative of a parent compound that often differs from it by a single element." This definition fits well within subsection (i), but not within either subsections (ii) or (iii). Accordingly, only a conjunctive

> interpretation of the subsections {(i) and [ (ii) or (iii) ]} is faithful to the plain meaning of analogue.

*U.S. v. Clifford*, 197 F.Supp.2d 516, 520 (E.D.Va. 2002). And Judge Morgan also held that the statute must be read in the conjunctive.

> The Analogue Act contains three subparagraphs. There is some dispute as to whether the three prongs of the Act are to be read in the disjunctive or whether the Government must prove conjunctively substantially similar chemical structure and either substantially similar effects or represented to have substantially similar effects. All of the cases that have interpreted the Analogue Act, with one exception, have held it should be interpreted in the conjunctive, meaning that the Government must establish subparagraphs (i) and (ii) or subparagraphs (i) and (iii). Compare *United States v. Vickery*, 199 F.Supp.2d 1363 (N.D.Ga. May 16, 2002) (holding the Analogue Act must be construed conjunctively to avoid unintended or absurd results), and *United States v. Clifford*, 197 F.Supp.2d 516 (E.D.Va.2002) (holding that the plain meaning of the statute and legislative history requires a conjunctive interpretation), and *United States v. Roberts*, 2001 U.S. Dist. LEXIS 20577, 2001 WL 1646732 (S.D.N.Y. Dec.14, 2001) (same), and *United States v. Forbes*, 806 F.Supp. 232 (D.Colo.1992) (holding that a controlled substance analogue must satisfy clause (i) and clauses (ii) or (iii)), with *United States v. Greig*, 144 F.Supp.2d 386 (D.Vi.2001) (holding a substance may be a controlled substance analogue if it satisfies section (i), (ii), or (iii)).

> This Court adheres to those cases adopting the conjunctive interpretation and finds that the Government has proven at least subparagraphs (i) and (ii) of the statute beyond a reasonable doubt in the instant case.

*United States v. Klecker*, 228 F. Supp. 2d 720, 727 (E.D. Va. 2002) aff'd, 348 F.3d 69 (4th Cir. 2003) The sole contrary case cited in *Klecker* – *Greig* – was effectively overruled in *U.S. v. Hodge*, 321 F.3d 429 (3rd Cir. 2003). See also *United States v. Turcotte*, 405 F.3d 515, 522-23 (7th Cir. 2005); *United States v. Forbes*, 806 F. Supp. 232, 234-36 (D. Colo. 1992).

If two of the three prongs make specific reference to the chemical having to be "substantially similar" to a controlled substance, it only makes sense that they be "substantially similar" to the same controlled substance.  And if the second and the third prongs are fungible – if the government must prove that the suspect chemical be "substantially similar" to a controlled substance, OR that the defendant represented that the suspect chemical would produce substantially similar stimulant, depressant or hallucinogenic effects to those of a controlled substance – it also seems clear that they either be the same or be represented as being the same as the same controlled substance.

To put it simply, the government cannot argue that the substance in question is "substantially similar" to one chemical for one element and to another chemical for another element.

We do not ask the Court to exclude the expert opinions that have been expressed in the declarations, though we ask the Court to be vigilant against a direction that the evidence could take.

The United States has a problem in this case.  Only one of the chemicals – methylone – has been the subject of much study.  Tests performed on methylone have compared it to a number of controlled substances, finding (in one study cited by Dr. Prioleau) that it was about half as potent as the chemical of which it was supposedly an analogue, MDMA.

As for MDPV, Dr. Prioleau's declaration (paragraph 5f) states:

> ... there are a limited number of pharmacological studies using
> MDPV in animals in the scientific literature and no studies directly
> evaluating the pharmacological activity of MDPV in humans...

Dr. Prioleau then goes on to describe how studies using other chemicals that are structurally similar to MDPV suggest to her that MDPV will be pharmacologically similar to methcathinone. We recognize that the government may legitimately try to argue that if MDPV is similar to methamphetamine, and if methcathinone is similar to methamphetamine, that MDPV must be similar to methcathinone. However, we also wish to call the Court's attention at this point to the strong likelihood that, either in testimony or in argument, the government will resort to arguing that MDPV is similar to methamphetamine, as though that is itself sufficient to support a conviction.

The evidence that this Court should rule in advance of trial to be inadmissible is the evidence from the phone calls from which we expect that the government will try to argue that because Mr. McFadden represented 4-MEC to be "like" cocaine or crystal meth, that is proof of the third element of the crime.

We believe that the practical effect of the conjunctive construction of this statute is that representations that 4-MEC is substantially similar to cocaine or to crystal methamphetamine do not prove an element of the offense.

Such statements, therefore, do not tend "to make a fact more ... probable than it would be without the evidence," Federal Rule of Evidence 401(a), and any probative value it might have would be substantially outweighed by a danger of "unfair prejudice, confusing the issues, [and] misleading the jury. Federal Rule of Evidence 403.

**Conclusion**:

We pray this Court to rule that the statements attributed to Mr. McFadden that 4-MEC is "like" cocaine or crystal meth should not be admitted.

We further pray this Court to be aware of our concern with the expert testimony in this case and the strong possibility that the government will attempt to argue, or have the expert assert, that there is any similarity in physiological function to any other chemical other than MDMA (in the case of methylone) or methcathinone (in the case of MDPV or 4-MEC). If such an assertion or argument is made, we ask that the Court rule it impermissible.

STEPHEN DOMINICK McFADDEN

By Counsel

_____
J. Lloyd Snook, III
VSB No. 19230
Snook & Haughey, P.C.
408 East Market Street, Suite 107
P.O. Box 2486
Charlottesville, VA 22902

(434) 293-8185
(434) 295-0698 (fax)

MAILING CERTIFICATE

I hereby certify that I caused this document to be posted to the ECF system this December 21, 2012.

\_\_\_\_\_/s_____
J. Lloyd Snook, III